MATTER OF SZAJLAI

In SECTION 341 Proceedings

A-13081544

*Decided by Assistant Commissioner October 5, 1962*

Subject's absence abroad in the United States armed forces during the period of physical presence required by section 301(b) of the Immigration and Nationality Act, as amended, for retention of United States citizenship, is regarded as constructive physical presence in the United States within the meaning of that section.

The subject has applied to this Service for a certificate of citizenship, claiming to have acquired United States citizenship at birth abroad to a citizen mother and an alien father. The District Director and the Regional Commissioner have concluded that the application should be granted, a conclusion in which this office concurs.

Applicant's mother was born in the United States on January 23, 1917, and lived in this country until 1921. On September 30, 1934, she was married to applicant's father, an alien, and the applicant was born in Hungary on May 14, 1936. He was admitted to the United States for the first time on July 22, 1958, as a citizen of the United States in possession of a United States passport. Thereafter, he was inducted into the Armed Forces of the United States on May 13, 1960 and, under military orders, served overseas on foreign duty from October 5, 1960 until May 12, 1962, when he was returned to the United States.

It is conceded that under Section 1993 U.S.R.S., as amended May 26, 1934 (48 Stat. 797),[1] the applicant became a citizen of the United States at the time of his birth. It is also undisputed that under section 301(b) of the Immigration and Nationality Act (66 Stat. 163),[2] his arrival in the United States in 1958, at which time he was over 16 but under 23 years of age, was timely for the purpose of permitting him then to be recognized as a citizen of the United States (*Lee You Fee* v. *United States*, 355 U.S. 61; *Matter of M—*, 7 I. & N. Dec. 646).

[1] See Appendix I.
[2] See Appendix II.

A question arises, however, with regard to whether he may still be considered a citizen in view of the factual interruption of his physical presence in this country by his absence abroad in the service of the Armed Forces of the United States.

Under section 301(b) of the Act, the applicant, in order to retain his United States citizenship, is required to complete five years' continuous physical presence in the United States before reaching 28 years of age. Section 16 of the Act of September 11, 1957 (71 Stat. 644),[3] permits temporary absences from the United States during the period of required physical presence without a break in its continuity, provided these absences in the aggregate are less than 12 months.

As the applicant's absence abroad totaled more than 12 months, section 16 is ineffective to preserve the continuity of the period of physical presence in the United States which began to accumulate with his 1958 entry and, in view of his age when factually he resumed physical presence in the United States, he is not in a position to accumulate a new five-year period of continuous physical presence here before he becomes 28 years old. Under section 301(b), therefore, his service abroad in the Armed Forces of the United States will have had the extraordinary effect of depriving him of his United States citizenship, unless his physical presence may be regarded as having continued to accumulate in the United States during the time he was serving abroad. Forfeiture of citizenship under such circumstances would be so palpably an absurd and inequitable result that resort may be had to the legislative history of the Act for any light it may shed.

The legislative history of section 301(b), as well as related sections, is of no assistance in determining the Congressional intent concerning the effect of absence abroad in the Armed Forces of the United States upon the period of physical presence being accumulated as compliance with the conditions for retention of citizenship. The original provisions of that section were found to be harsh and unduly restrictive, however, and section 16 was enacted to alleviate the hardships imposed. As to this ameliorative legislation, the reports on the bills which preceded its enactment (Senate Report No. 1057 on S. 2792 and House Report No. 1199 on H.R. 8123, 85th Congress, 1st session) indicate that there were then in contemplation only the results which would follow from voluntary absences from this country, as in the cases of students in the United States who might proceed abroad for the purpose of spending summer vacations with their parents residing there:

The amendment to section 1 will permit nationals and citizens of the United States at birth, born outside the geographical limits of the United States and

---

[3] See Appendix III.

its outlying possessions of parents, one of whom is an alien and the other a citizen of the United States, to comply with the residential (sic) requirements of section 301(b) of the Immigration and Nationality Act, notwithstanding the fact that within the 5 years during which they are required to be continuously physically present in the United States, they may leave the United States for short periods. This proposal is predicated on the fact that many persons, particularly children, falling within the purview of the above-cited section of the law, spend the requisite 5 years in the United States while attending school. Under the present wording of the law, they are prevented from leaving the United States during that time even for the purpose of spending their vacation with their parents residing abroad. Realizing that there is hardship involved, the committee proposes to authorize a certain degree of statutorily limited leniency in the administration of that section of the Immigration and Nationality Act (House Report No. 1199, supra, p. 6).

Section 301(a)(7) of the Act shows also that legislative foresight was exercised to insure that honorable service in the Armed Forces of the United States would be taken into consideration in computing the period of physical presence required of a parent to transmit citizenship to a child born abroad. But these are the only areas in which a Congressional intent is clearly shown.

It would be patently erroneous to infer from the failure on these two occasions to provide legislatively for the problem in the instant case that Congress intended the performance of military service abroad in the Armed Forces of the United States to work forfeiture of United States citizenship. Rather, the Congressional inaction must be viewed in the light of the fact that constructive residence and physical presence in the United States are concepts regularly given effect in the field of immigration and nationality law, and that these concepts are manifestly applicable to section 301(b).

Thus, in *Matter of L—B—D—*(4 I. & N. Dec. 639 (1952)), in considering the question of whether United States citizenship was retained under a statute which required the child to take up residence in the United States before 16 years of age, the Attorney General ruled that the retention requirements were satisfied although factually residence was not taken up until after that age because of conditions beyond the control of the child.

Similarly, in *Matter of J—M—D—* (7 I. & N. Dec. 105 (1956)), the Board of Immigration Appeals had under consideration a section of the Immigration and Nationality Act authorizing suspension of deportation if an alien, among other prerequisites, had "been physically present in the United States for a continuous period of not less than seven years." (Section 244.)[4]

In that case the alien factually for a time had been abroad in the Armed Forces of the United States. The Board drew a distinction

---

[4] See Appendix IV.

between such an absence, which was under the compulsion of military orders, and a voluntary absence such as that stemming from service as a seaman on merchant vessels. In reaching its conclusion that the alien should be regarded as continuously physically present in the United States and hence eligible for suspension of deportation, the Board during its discussion made some comments that are particularly apposite to the present applicant's situation:

It is a well-settled rule of statutory construction that a case may be within the meaning of a statute and not within its letter, and within its letter and not within its meaning; and that a statute should be construed so as to carry out the intent of the legislature, although such construction may seem contrary to the letter of the statute (*Stewart* v. *Kahn*, 78 U.S. 493, 504 (1870) ; *Church of the Holy Trinity* v. *United States*, 143 U.S. 457, 459, 472 (1892) ). We believe it is inconceivable that Congress could have intended that one who risked his life in active combat duty in a foreign country would thereby be barred from suspension of deportation whereas another alien, who performed no military duty and who was thus able to remain in the United States, would be entitled to the benefits of section 244(a)(1) of the Immigration and Nationality Act. It is our considered opinion that an alien who, while residing in the United States, is inducted into the Armed Forces of this country and serves honorably is to be regarded as being physically present in the United States during such service even though part or all of his tour of duty is in a foreign country. (p. 107)

After the reopening as directed in the published decision and submission of the case to Congress later in 1956 under the procedure required by the statute where the granting of suspension of deportation is approved, the record of lawful admission for permanent residence was created, the deportation proceedings were canceled, and in due time the alien was naturalized (*Matter of Jung*, A8 951 834).

In two other cases (*Matter of S—*, 8 I. & N. Dec. 221, and *Matter of S—*, 8 I. & N. Dec. 226 (1958)), the Board of Immigration Appeals had under consideration section 301(b), the identical section of law involved in the present case. In those two cases, factually the coming to the United States and consequently the beginning of physical presence in this country were not in sufficient time to permit a full five years' physical presence to accumulate before 28 years of age. The Board nevertheless concluded that the applicants were to be regarded as having constructively complied with the provisions of section 301 (b), basing its conclusions upon the fact that failure to take up timely physical presence was due to circumstances beyond the control of the children.

Additionally, in a number of unreported cases, aliens who factually at some time during the statutory period had been temporarily absent from the United States in the Armed Forces of the United States were nonetheless regarded by the courts as continuously resident and physically present in the United States during the time they were so abroad and as having met those statutory qualifications for naturalization.

In all of the foregoing cases, there was the common factor—as there is in the instant one—that literal compliance with the letter of the law was presented by the action of the Government itself.

Based on the foregoing and in the absence of a clear legislative directive that under circumstances such as those in the instant case the concept of constructive physical presence in the United States is inapplicable to section 301(b), this Service adheres to the view that his physical presence in the United States within the meaning of section 301(b) has not been interrupted and he has not forfeited his United States citizenship. His application for a certificate of citizenship will, therefore, be granted.

The conclusion that the applicant has not been divested of United States citizenship by reason of his absence from this country pursuant to military orders is consistent with the well-settled principle of law that no conduct results in expatriation unless it is engaged in voluntarily (*Nishikawa* v. *Dulles*, 356 U.S. 129). To hold that the applicant was voluntarily outside the United States within the contemplation of section 301(b) loses sight of the obligations inherent in military service.

**ORDER:** It is ordered that the action of the Regional Commissioner in granting subject's application for a certificate of citizenship be approved.

## APPENDIX I

### Section 1993 U.S.R.S., as amended May 26, 1934:

Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States and resides therein for at least five years continuously immediately previous to his eighteenth birthday, and unless, within six months after the child's twenty-first birthday, he or she shall take an oath of allegiance to the United States of America as prescribed by the Bureau of Naturalization.

## APPENDIX II

## IMMIGRATION AND NATIONALITY ACT

Section 301. (a) The following shall be nationals and citizens of the United States at birth: . . .

(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attain-

ing the age of fourteen years: *Provided*, That any periods of honorable service in the Armed Forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph.

(b) Any person who is a national and citizen of the United States at birth under paragraph (7) of subsection (a), shall lose his nationality and citizenship unless he shall come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United State[s] for at least five years: Provided, That such physical presence follows the attainment of the age of fourteen years and precedes the age of twenty-eight years.

(c) Subsection (b) shall apply to a person born abroad subsequent to May 24, 1934: Provided, however, That nothing contained in this subsection shall be construed to alter or affect the citizenship of any person born abroad subsequent to May 24, 1934, who, prior to the effective date of this Act, has taken up a residence in the United States before attaining the age of sixteen years, and thereafter, whether before or after the effective date of this Act, complies or shall comply with the residence requirements for retention of citizenship specified in subsection (g) and (h) of section 201 of the Nationality Act of 1940, as amended.

## APPENDIX III

Section 16 of the Act of September 11, 1957:

In the administration of section 301(b) of the Immigration and Nationality Act, absences from the United States of less than twelve months in the aggregate, during the period for which continuous physical presence in the United States is required, shall not be considered to break the continuity of such physical presence.

## APPENDIX IV

## IMMIGRATION AND NATIONALITY ACT

Section 244. (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

(1) applies to the Attorney General within five years after the effective date of this Act for suspension of deportation; last entered the United States more than two years prior to the date of enactment of this Act; is deportable under any law of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the Immigration Act of 1017, as amended; and has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child, who is a citizen, or an alien lawfully admitted for permanent residence; or